# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                                                          Civil No. 98-1168 JC/WWD
                                                                         Criminal No. 94-721 JC

CIPRIANO ZAMUDIO,

    Defendant-Movant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1.  THIS MATTER comes before the Court upon Petitioner's Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255, filed September 24, 1998. Petitioner is incarcerated and is proceeding pro se. Following a jury trial, he and three co-defendants were convicted of conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846. On July 29, 1996, he was sentenced to 235 months, with 5 years of supervised release.

    2.  The underlying incidents involve Petitioner's role in procuring a tractor trailer leased by co-defendant Megallon to transport drugs over the Mexican border. He asserts five grounds for relief. Grounds I, II and V (and part of Ground III) contain numerous allegations based on ineffective assistance of counsel. Ground III includes claims of juror bias and trial court error regarding translations and transcriptions of taped recorded conversations. Ground IV is a claim that the Government violated 18 U.S.C. § 201 by rewarding a cooperating co-defendant. For all its lengthy sixty-nine (69) pages, Zamudio's petition offers no meritorious argument or factual

content, as I discuss below.  I will address the claims in the order in which they are raised in the Petition, and will note in the course of their examination when several of them are redundant.

*Ground I - Ineffective Assistance of Counsel*

3.  In Ground I, Petitioner alleges eight bases for ineffective assistance of counsel.  In order to prevail on his claim of ineffective assistance of counsel, Zamudio must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984); accord, Rogers v. United States, 91 F.3d 1388, 1391 (10th Cir. 1996).   Further, there is a "strong presumption" that counsel has acted reasonably and represented his client effectively.  Id., 466 U.S. at 689.  Petitioner was represented at trial by retained counsel Ms. Rohr and Mr. Batara.

4.  *Ground I(a)*: Petitioner claims that defense counsel never challenged the sufficiency and credibility of the agent who testified about his post-arrest exculpatory statement.  DEA Agent Mendonca testified that Zamudio had admitted his involvement with Megallon in using a trailer to transport cocaine.  In a statement made after he was given his Miranda rights in Spanish, Petitioner had told Mendonca that he and Megallon had

> "gone to American Leasing Trailer in order to try to find a trailer that was suitable to get a secret compartment in order to transport the cocaine. Once they didn't find a trailer that was satisfactory for their requirements, they agreed to use Mr. Megallon's trailer."  Tr. at 92.[1]

5.  A review of the trial transcript shows that one of his defense attorneys *did* attempt to challenge Mendonca's testimony.  Ms. Rohr's questions to Mendonca focused on the accuracy of his recollection and about the written report of Zamudio's post-arrest statements, at possible

---

[1] References to the transcript of the trial, beginning January 23, 1996, are made where appropriate.

language barriers because of the fact that the interview was conducted in English,[2] and at the general integrity of the interview process. Tr. at 97-114. Certain inaccuracies raised by Zamudio in his Petition regarding lease payments for the trailer are irrelevant and immaterial and do not touch upon his involvement with the drug conspiracy. Nor was his ability to understand English a "hotly contested" issue as he contends on page 7 in his petition. I find neither deficient performance nor any prejudice to Petitioner in the way counsel handled Mendonca's credibility and the related evidence.

      6. *Ground I(b)*: Zamudio claims that counsel did not present all available evidence about the rental of the trailer from Russell Trailer Leasing Corporation. Zamudio's defense was based partially on the position that while Zamudio had paid to rent a trailer, it was not the trailer which was used to transport drugs. The record shows that Mr. Batara's cross-examination of Megallon elicited exhaustive testimony about Megallon's use of various leased trucks for migrant farm work, Tr. at 388-466,[3] and details concerning Petitioner's role in the rental of Megallon's truck. Tr. at 403-06, 418.

      7. Petitioner offers no suggestion of evidence not offered, or specific areas not covered in counsel's cross-examination of Megallon which would support his contention that trial counsel was deficient in his performance.

      8. *Ground I(c):* Zamudio claims that his Sixth amendment guarantee of confrontation

---

[2] Zamudio was read his rights in Spanish because Spanish was his primary language, but interviewed in English based upon Petitioner's consent and on his apparent comprehension of English. Tr. at 102.

[3] In fact, the trial court cautioned defense counsel sua sponte that it found the examination probed into matters that were irrelevant and nonproductive. Tr. at 457.

3

was violated when the trial court placed limitations on the cross-examination of Agent Mendonca.[4] This issue was raised on direct appeal in the Tenth Circuit and was rejected. The district court limited cross-examination of Agent Mendonca so as to not implicate the co-defendants. Zamudio contends that because of this limitation, the trial court should have allowed him to cross-examine Mendonca on other portions of his post-arrest statement.

9. The Court of Appeals found that the entire statement was not necessary for cross-examination to be effective. Zamudio did not show what the omitted portions of his statement would have shown, and did not argue that these portions would have shown that he did not participate in the drug conspiracy in the manner testified to by Agent Mendonca. At most, the Tenth Circuit reasoned, the excluded portions would have revealed an attempt by Zamudio to shift the blame onto the other co-defendants for a "more meaningful involvement in the scheme." U.S. v. Zamudio, (Table, text in Westlaw), 1998 WL 166600 (10th Cir. NM).[5]

10. Issues previously considered and disposed of on appeal will not be considered under § 2255. United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994) (citations omitted); see also United States v. Prichard, 875 F.2d 789, 791 (10th Cir.1989) (absent intervening change in law of circuit, issues disposed of on direct appeal generally will not be considered in a § 2255 collateral attack). Therefore, I decline to re-examine this issue.

---

[4] Although several of the claims under Ground I are not based on ineffective assistance of counsel, I address them here because Petitioner has included them in the first ground.

[5] The Tenth Circuit noted that the Confrontation Clause guarantees defendants an opportunity for effective cross-examination, but that it does not guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Zamudio, at 1529 (citing Delaware v. Fensterer, 474 U.S. 15, 20 (1985) and United States v. Pedraza, 27 F.3d 1515, 1529 (10th Cir. 1994)).

11. *Ground I(d):* Zamudio claims that trial counsel was ineffective for not investigating the testimony of a co-conspirator (Megallon) for truthfulness as well as being rewarded with leniency for his testimony. This allegation of error is nothing more than conclusory. Cross-examination and re-cross of Megallon by Mr. Batara was comprehensive and exhaustive. Tr. at 388-465; 550-556. Megallon was cross-examined and re-crossed by counsel for the other defendants as well. Petitioner does not suggest what areas should have been covered, or what information should have been elicited, but only makes the bare allegation that Megallon was not "fully cross-examined." Pet. at 9.[6] This claim is without merit.

12. *Ground I(e):* Zamudio claims that the procedure of the DEA of not recording his interrogation on the day he was taken into custody was a violation of the Fifth Amendment. I agree with the Government's position that the Fifth Amendment does not require that Zamudio's post-arrest statement be recorded. Further, even construing this claim liberally as a due process challenge, it has no merit. The fact that the statement was not recorded, even if this could be viewed as error, does not prejudice the Petitioner so as to render the entire proceeding fundamentally unfair. Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990); Lockhart v. Fretwell, 506 U.S. at 364 (1993).

13. *Ground I(f)*: Zamudio claims that his defense counsel did not investigate tape surveillance to determine whether the Government had complied with the wire tap statute (18 U.S.C. § 2510 et seq). These taped conversations (two which were between Megallon and Zamudio) were played to the jury, and had also been transcribed and translated from Spanish to

---

[6] Petitioner also alleges here that the Government violated 18 U.S.C. § 201 by rewarding Megallon for cooperating with his testimony. This will be addressed under Ground IV.

English.

14. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, sets forth comprehensive standards governing the use of wiretaps and electronic surveillance by both governmental and private agents. See Mitchell v. Forsyth, 472 U.S. 511, 514 (1985). While general fourth amendment requirements are still applicable to video surveillance, and suppression is required when the government fails to follow these requirements, in this case the Government's conduct is not suspect. See U.S. v. Mesa-Rincon et al., 911 F.2d 1433, 1436 (10th Cir. 1990). There is no basis for Petitioner's allegations of failure to investigate, when there is nothing to investigate. Contrary to Petition's allegations, the Government did not violate the statute because one of the parties to the conversations (Megallon) consented to the interception. See 18 U.S.C. § 2511(c)(d).

15. Neither did the Government's conduct violate Zamudio's constitutional rights. See U.S. v. Poe, 398 F.Supp. 494 (W.D.Okla. 1975) (noting that under Federal law if one of the parties to a telephone conversation consents to its being recorded, that there is not a violation of pertinent Federal Statutes (18 U.S.C. § 2510 et seq.) or of the Fourth and Fifth Amendments to the United States Constitution; see also Dalia v. U.S., 441 U.S. 238 (1979)(Fourth Amendment does not prohibit per se a covert entry performed for the purpose of installing otherwise legal electronic bugging equipment); U.S. v. White, 401 U.S. 745 (1971) (where radio transmitter was concealed on the person of an informant with knowledge of the informant, there was no violation of defendant's Fourth Amendment right to be secure against unreasonable searches and seizures).

16. *Ground I(g):* Zamudio contends that defense counsel should have moved to suppress the tapes because they were inaccurate. Although the tapes were read to the jury, the jury

members also read along from a Spanish transcription or an English translation. From a review of the trial transcript, it is obvious that the trial court afforded considerable attention to the translation and transcriptions of these tapes and to their admissibility as evidence. Tr. at 174-186. Also, extensive voir dire was conducted regarding the process of the transcription and translation by all defense counsel, including Petitioner's attorney, see Tr. at 317-329.

17. The trial court was careful to avoid any suggestion of bias during its assessment of the integrity of the tapes or their written versions, both in Spanish and English. Tr. at 187-197. The trial judge ultimately noted that although some portions of the tape were inaudible (and marked as "inaudible" on the transcription and translation), there were no substantive errors on the written versions. Tr. at 299.[7] Jury members were instructed that they would have to evaluate the accuracy of the translations into English, and that they were free to reject portions of the proffered transcript on that basis. Tr. at 328-29.

18. Defense counsel were also advised that they were free to make objections to the tapes or written versions. Tr. at 328. Petitioner's counsel not only joined with objections raised by other defense counsel regarding due process concerns surrounding use of the transcript, Tr. at 315, 180-82, but raised his own objections based on the tape's quality and the accuracy of the translation. Tr. at 183-84. This claim has no merit, as I can find nothing deficient in defense counsel's conduct regarding this claim of Petitioner's, much less any resulting from counsel's representation.

---

[7] The trial judge stated that "[t]he fact that honest people might disagree as to how to translate an idiomatic expression or a slang Spanish term does not necessarily negate the legitimacy of a translation" although he could "envision some instances. . . where it might be very material." Tr. at 303.

7

19. *Ground I(h):* Zamudio claims that counsel never investigated the quantity of drugs attributed to Petitioner. Counsel did not object to the sentencing classification regarding base offense level in his objections filed to the Presentence Report, which indicated that the base offense level was 38 (235 to 293 months). See docket #248, p. 3 in Crim.No. 94-721-JC.

20. Inquiry for failure to investigate is done on case-by-case basis. Cmp. Miles v. Dorsey, 61 F.3d 1459 (10th Cir.1995), cert. denied, __ U.S. __, 116 S.Ct. 743, 133 L.Ed.2d 692 (1996). A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment. Strickland, 466 U.S. at 691.

21. The performance of defendant's counsel "must be considered in light of the strength of the government's case." United States v. Rivera, 900 F.2d 1462, 1474 (10th Cir. 1990); Eggleston v. United States, 798 F.2d 374, 376 (9th Cir.1986). According to the Presentence Report, approximately 580 pounds (263 kilograms) of cocaine was found hidden in the secret compartment in the trailer. See Duhart v. Carlson, 469 F.2d 471 (10th Cir. 1972) (court can take judicial notice of its own records). Since 150 kilograms or more of cocaine establishes a base offense level of 38, Petitioner's situation is hardly a fine-line situation where any investigation by counsel, even assuming counsel was deficient in failing to investigate, would have made a difference in the outcome. Thus, relief should be denied.

*Ground II - wire tap (18 U.S.C. § 2510 et seq.)*

22. This claim was addressed above under *Ground I(f)*.

*Ground III*

23. *Ground III(a):* Zamudio alleges that juror bias existed even before the trial began.

This claim should have been raised on direct appeal, but was not, and is therefore procedurally defaulted. See United States v. Allen, 16 F.3d 377 (10th Cir. 1994) ("[Section] 2255 is not available to test the legality of matters which should have been raised on appeal"). Moreover, Petitioner does not show any basis for cause and prejudice, or a fundamental miscarriage of justice, which would prevent the bar from being applied to his case. Id.

24. Even if the claim were not procedurally defaulted, the claim has no merit. There is a presumption that jurors are not biased, and that they follow the law in basing the evidence on the evidence presented. See United States v. Hollis, 971 F.2d 1441, 1455 (10th Cir. 1992), cert. den., 507 U.S. 985 (1993). Petitioner does not allege that jurors were dishonest in their responses during voir dire.[8] He bases this claim on juror comments solicited by a "professional process service". Pet. at 18. For example, one juror indicated that the fleeing of one co-defendant during trial may have had a bearing on the verdict. Another allegedly stated that he thought this country's narcotics problem would be one of its downfalls.

25. However, although these comments show that certain information may have influenced a juror's general frame of mind, none show any bias sufficient to render the trial fundamentally unfair. Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990). Therefore, this claim should be denied on the merits even if it were not procedurally defaulted, which I find that it is.

26. *Ground III(b):* Zamudio claims that the trial court committed plain error when the jury was told to do the best they could pertaining to the translations and transcriptions of the tape recordings. This claim was not raised on direct appeal, either, and is therefore procedurally

---

[8] Zamudio's defense counsel was allowed to conduct voir dire, see Crim.No. 94-721-JC, #220.

defaulted. However, even if it were not defaulted, I have already addressed the substance of the claim above, see *Ground I(g)*, in which I find that it has no merit.

27. *Ground III(c):* Petitioner claims again that his defense counsel were ineffective when they challenged the translations. This was addressed above in *Ground I(g)*.

**Ground IV**

*28.* Zamudio claims that the Government violated 18 U.S.C. § 201 by rewarding a cooperating co-defendant (Megallon) for his testimony and cooperation. Megallon entered into a plea agreement with the Government in exchange for testifying against the other co-defendants. See Crim.No. 94-721-JC, ## 223, 224.

29. 18 U.S.C. § 201(c)(2), entitled "Bribery of public official and witnesses" reads in pertinent part that:

> (c) Whoever– . . .
> 2) directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, . . . or for or because of such person's absence therefrom . . .shall be fined . . . or imprisc

30. Petitioner's contention that the Government violated this statute is foreclosed by the recent Tenth Circuit *en banc* opinion of United States v. Singleton, 165 F.3d 1297, 1300-1302 (10th Cir. 1999), holding that 18 U.S.C. § 201(c)(2) does not apply to the United States Government acting through its agents. The court stated "we simply believe this particular statute does not exist for the government." Id. at 1302. It also noted that the only possible exception to this ruling would be if a prosecutor "offers something other than a concession normally granted by the government in exchange for testimony." Id. My review of the sealed sentencing proceedings regarding Megallon, Crim.No. 94-721-JC, # 299, indicates that such is not the case here.

Accordingly, relief on this ground should be denied.

*Ground V*

31. *Ground V(a):* Zamudio claims that trial counsel were ineffective because they failed to investigate 18 U.S.C. § 2510 et seq. (wire tap statutes) and failed to seek to suppress the three recorded conversations that Megallon had with Zamudio and another co-defendant. It should be clear from my findings in *Ground I(f)* that the Government's conduct in taping those conversations did not involve violations of any rights afforded Zamudio either by statute or the United States Constitution. The record also shows that defense counsel's vigorous objections to the tape recordings, transcriptions and translations were all overruled. There is no basis to Petitioner's claim.

32. *Ground V(b):* Zamudio again claims that his trial attorney never investigated his interrogation at the DEA office. This claim was also addressed above in *Ground I(a)*.

33. *Ground V(c)*: Zamudio claims that his lawyers did not present exhibits from Russell Trailer Leasing Corporation to attack Megallon's credibility. This claim was addressed in *Ground I(b)*.

34. *Ground V(d)*: Zamudio claims that his appellate counsel could have raised on appeal that trial counsel was ineffective in his cross-examination of Megallon. Jackson v. Shanks, 143 F.3d 1313 (10th Cir.1998). The Sixth Amendment, however, "does not require an attorney to raise every nonfrivolous issue on appeal." See Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir.1995) (citing Jones v. Barnes, 463 U.S. 745, 751 ). It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed. See Tapia v. Tansy, 926 F.2d 1554, 1564 (10th Cir.), cert.

denied, 502 U.S. 835 (1991).

35. It should be obvious from my findings on the issue regarding Megallon's cross-examination that the issue concerning Megallon's cross-examination is not a "dead-bang winner," which Petitioner would need to show before the performance of an appellate advocate could be considered to be deficient and prejudicial to a defendant. United States v. Dixon, 1 F.3d 1080, 1083 (10th Cir. 1993). This claim also fails.

36. *Ground V(e):* Zamudio contends that his defense counsel failed to argue for sentencing consideration in regard to role adjustments, eligibility for safety valve (U.S.S.G. §5C1.2) and to challenge the total quantity of cocaine (this last claim has already been examined in *Ground I(h)*).

37. U.S.S.G. §5C1.2 allows a sentencing court to impose a sentence without regard to statutory minimum sentence if five criteria are met. I note in particular two of the criteria, one which concerns a defendant's role as organizer, and the other requiring a complete statement to the Government of all information concerning the offense. Zamudio, based on the information in his Petition, and on the evidence from the record, would not have been able to satisfy the burden he has as the defendant, which is to prove, by a preponderance of the evidence, the applicability of this section. See, e.g., U.S. v. Verners, 103 F.3d 108, 110 (10th Cir. 1996).

38. As the Tenth Circuit noted on direct appeal, evidence of Zamudio's guilt as a participant organizer of the drug conspiracy was "overwhelming." 1998 WL 166600 at **8. Hence, it would have made little sense for defense counsel to object to that part of the Presentence Report. Counsel cannot be considered to be ineffective for failing to raise a meritless claim. U.S. v. Dixon, 1 F.3d 1080, 1084 n.5 (10th Cir. 1991); see also U.S. v. Young, 862 F.2d

815, 820 (10th Cir. 1989) (counsel not ineffective for failing to file motion to suppress that probably would not have been granted).

39. Instead, defense counsel chose to object to the Presentence Report on Eighth Amendment grounds which touched upon possible health consequences to Petitioner as a result of imprisonment, given Petitioner's family health history. Such decisions involving trial tactics and strategy are "virtually unchallengeable." Strickland v. Washington, 466 U.S. 668, 690 (1984). Accordingly, relief should be denied on this claim.

40. In sum, Petitioner has not presented any evidence which would show that any of his grounds for relief have merit and relief on his federal habeas petition should be denied.

## Recommendation

I recommend that the petitioner's application for Writ of Habeas Corpus be denied and that this cause be dismissed with prejudice.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE